WILLIAM CHRISTIAN & CO. V. C. BUNKER, JR., AND
J. C. HOADLEY.

B. executed a deed of trust conveying his steam mill, situate on land which did not belong to him, to C., who gave his consent for the removal of the old engine ; a new portable steam engine was placed in the mill by B., who had purchased the same from D., under an unrecorded contract that it should remain the property of D. until paid for: *Held*, that until paid for the new engine was not subject to sale under the deed of trust.

APPEAL from Harris. Tried below before the Hon. James Masterson.

On June 13, 1871, appellee, Bunker, by his agent, purchased of Hoadley, the intervenor, a portable steam engine, No. 917, in Massachusetts, paid $1266.66 on the same, and gave his note for the balance, $2607.21, and they executed an agreement in substance that the engine was delivered to Bunker for use, but was to remain the property of Hoadley until the note was paid. This agreement was never recorded.

On June 20, 1871, Bunker executed a deed of trust to

appellants on his steam saw-mill and all its appurtenances, to secure a note for $3000, which deed of trust was duly recorded June 23, 1871.

About the time the deed of trust was given Bunker told appellants that the engine then in the mill was too small, that he was going to put in a larger engine, and thereby appellants' debt would be the better secured, and that he would then want to sell the old engine and would want them to release their lien on that.

The new engine (purchased from Hoadley, intervenor) arrived at the saw-mill in August, and in November the old one was taken out and the new one put in. In February following Bunker sold the old engine, and appellants released their lien on that (as was previously agreed upon, whenever the new engine was put in), and the greater part of the proceeds—$750 out of $858—was paid to appellants on their note.

Afterwards, on August 8, 1872, the mill and all its appurtenances, except this engine, was destroyed by fire.

Four days after the fire appellants brought this suit to foreclose their deed of trust on the saw-mill and its appurtenances, or what was left of it, including the new engine, No. 917. Hoadley intervened, claiming that the engine was his, and contesting the lien claimed thereon by appellants. Judgment was rendered by default against Bunker for balance due on his note, but the lien was denied upon the engine, and the same was decreed to belong to Hoadley, intervenor.

From so much of the judgment as denied appellants' lien on the engine, and decreed the same to the intervenor, this appeal was taken.

*Crosby & Hill*, for appellants.—It has been repeatedly held that a steam engine, erected for the purpose of furnishing the motive power of a manufactory, is to be re-

garded as a fixture; or in other words, as a part of the manufactory itself. (Aves v. Ogilsby, 7 Watts, 106; Winslow v. The Merchant's Ins. Company, 4 Met., 306; Alison v. McCune, 15 Ohio, 729; 11 Barbour, 43; 3 Harris, 507; 28 Maine, 545; 29 Id., 115; Gardiner v. Finlay, 19 Barbour, 317; Brennan v. Whitaker, 15 Ohio St., 446; Butler v. Page, 7 Metcalf, 40.)

Apply this principle to the case at bar and it seems conclusive that when the engine in controversy was put in the mill it became a part of it, as a fixture, and that the lien of plaintiff's deed of trust attached to it, although of prior date, and takes precedence over the intervenor's claim, which, though prior in point of time, was never recorded.

*Winch & Whitfield*, for appellee.—To enable appellants to recover, portable engine No. 917 must, first, have belonged to Bunker and not to Hoadley; second, must have been a fixture and attached to the realty; third, advances must have been made upon the faith of that engine as security by Christian & Co; and fourth, it must have been part of the mill at the time the deed of trust was executed.

The negative of each and all of these propositions is the truth, as shown by the evidence.

WALKER, J.—On the thirteenth of June, 1871, Bunker made a conditional purchase from Hoadley of steam engine No. 917. Their contract was made at Lawrence, Massachusetts. The engine was delivered to Bunker in August following, for use, at his mill at Harrisburg, Harris county, Texas. The agreement between Bunker and Hoadley was never recorded.

On the twentieth of June, 1871, Bunker mortgaged his mill and fixtures, with the engine then in the mill, No.

443, to the plaintiffs. The mill itself was not a fixture, the land on which it stood not belonging to Bunker.

The old engine was taken out of the mill, and the new one put in. That the appellants claimed the old engine on the fourteenth of February, 1872, is evidenced by the following instrument:

"MR. CHARLES BUNKER: You are hereby authorized to make sale of your Hoadley engine, without regard to our lien, by virtue of deed of trust of yourself to J. H. Crosby, trustee, dated November 20, 1871, for saw-mill appurtenances; the proceeds of said sale being paid over to us, and endorsed on your note of that date for $3000.

"Yours, etc.,          "WM. CHRISTIAN & Co."

There is a manifest error in date of the deed of trust referred to in this letter. It should be June 20, instead of November. The old engine was sold for $858 — $750 of which was paid over to Christian & Co.

It is now contended by the appellant that the deed of trust to Christian & Co. became a lien on the new engine paramount to any right of Hoadley. This cannot be the case. The new engine was a portable engine. The mill itself was not a fixture to the land, nor did the engine become such. Hoadley's right to the engine is paramount.

The judgment of the District Court is right, both in law and equity, and is affirmed.

AFFIRMED.